UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARIE WOHADLO,

               Plaintiff,                                 Hon. Hala Y. Jarbou

v.                                             Case No. 1:18-cv-1442

TENTCRAFT INC., et al.,

               Defendants.

_____/

### REPORT AND RECOMMENDATION AND ORDER

Plaintiff Marie Wohadlo, proceeding pro se, has sued Defendants TentCraft, Inc., Matt Bulloch, Zach Grice, Rob Hanel, and Josh Scott, alleging claims of sex-based discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Michigan Elliott–Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws. § 37.2101 *et seq.* Plaintiff also alleges a state-law claim for "infliction of emotional distress." This matter is presently before me on Defendants' Motion for Summary Judgment. (ECF No. 161.) The motion is fully briefed and ready for decision. Also before me is Defendants' Motion to Strike Plaintiff's Declaration (ECF No. 167), in which Defendants also request sanctions.

For the reasons that follow, Defendants' motion to strike is **GRANTED** as to Defendants' motion to strike Plaintiff's declaration but **DENIED** with regard to their request for sanctions. In

addition, pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendants' motion for summary judgment be **GRANTED**.[1]

## I.      Background

TentCraft is a company located in Traverse City, Michigan, that produces printed professional marketing materials, such as tents and banners. Defendant Bulloch is the President of TentCraft. (ECF No. 132-4 at PageID.1581.) During May of 2018—the period relevant to Plaintiff's claim—Defendant Hanel was TentCraft's People Manager and was responsible for human resources, including administration of TentCraft's policies. (ECF No. 161-2 at PageID.2019.) During the same period of time, Defendants Grice and Scott were employed by TentCraft, respectively, as Print Value Stream Supervisor (ECF No. 161-3 at PageID.2030) and Digital Print Operator (ECF No. 161-4 at PageID.2033). In addition, non-Defendants Eli McNaughton and Shawn Kellogg were employed by TentCraft, respectively, as Digital Print Operator (ECF No. 161-5 at PageID.2036) and Team Leader for UV (ECF No. 161-6 at PageID.2039).

In April 2018, Grice interviewed Plaintiff for a position with TentCraft. (ECF No. 120 at PageID.1230.) On April 30, 2018, Hanel, on behalf of TentCraft, extended an offer of employment to Plaintiff for a second shift Digital Print Operator position. (ECF No. 120 at PageID.1231; ECF No. 123 at PageID.1421.) Plaintiff accepted the offer and began her employment with TentCraft on May 7, 2018. Plaintiff's first day included human resources orientation, completion of paperwork, and review of TentCraft's policies, including its Harassment Policy. The policy provides:

---

[1]  Although Defendants have requested oral argument, the Court determines that the parties' briefs have adequately developed the issues, and oral argument is unnecessary.

*Harassment in the Workplace*

Harassment in the workplace includes, but is not limited to:

1.   Making offensive or derogatory comments based on race, color, gender, religion, or national origin either directly or indirectly to another person.

2.   Unwelcome sexual advances (either verbal or physical), requests for favors or other verbal or physical conduct of a sexual nature when:

> a.   Submission to such conduct is either an explicit or implicit term or condition of employment (e.g., promotion, training, timekeeping, overtime assignments, etc.)[;]
>
> b. Submission to or rejection of the conduct is used as a basis for making employment decisions; or
>
> c.   The conduct has the purpose or effect of substantially interfering with an individual's work performance, or of creating an intimidating, hostile, or offensive work environment;

3.   The conduct of unwelcome sexual flirtations, advances or propositions, verbal abuse of a sexual nature, subtle pressure or requests for sexual activities, unnecessary touching of an individual, graphic or verbal commentaries about an individual's body, sexually degrading words used to describe an individual, a display in the workplace of sexually suggestive objects or pictures, sexually explicit or offensive jokes, or physical assault.

(ECF. No. 161-2 at PageID.2023.) The policy also provides:

> Any employee who feels that he or she is a victim of any type of harassment, including but not limited to any of the conduct listed above, by any supervisor, other employee, customer, visitor, or any other person in connection with employment at TentCraft, should bring the matter to the immediate attention of his or her supervisor. If the alleged harassment involves the supervisor or the employee does not feel the matter can be discussed with his or her direct supervisor, the employee may bypass the supervisor and take the complaint up with the HR Department.
>
> After receiving notification of the employee's complaint, a thorough investigation will be initiated in a timely and as sensitive a manner as possible. After the investigation has been completed, a determination will be made by appropriate management regarding the resolution of the case, including any disciplinary action.

(*Id.*)

According to Hanel, TentCraft's standard practice as of May 7, 2018, was to provide new employees a copy of the policy. (ECF No. 161-2 at PageID.2019.) Plaintiff signed a form acknowledging receipt of the policy (ECF No. 123 at PageID.1430), although she claims she was never provided a copy (ECF No. 120 at PageID.1233).

### A.     May 10 and 11, 2018

On May 10, 2018, during training, Plaintiff was seated next to Kellogg at the computer desk depicted in the picture marked as Exhibit 10 to Plaintiff's deposition transcript. (ECF No. 120 at PageID.1236; ECF No. 123 at PageID.1458–59.) Because Plaintiff was trying to see the computer screen, her chair was within a couple of inches of Kellogg's chair. (ECF No. 120 at 1237.) As they sat watching the screen, Kellogg put his hands behind his head and reclined straight back "so that he was kind of prone," but with his torso still in the chair. (*Id.* at PageID.1236.) Kellogg remained in that position for about two minutes. Plaintiff claims that as Kellogg did this his groin was "uncomfortably close to [her] face." (*Id.*) Kellogg did the same thing as he and Plaintiff sat at the computer desk the following day. (*Id.* at PageID.1237.) Plaintiff does not recall whether she moved her chair away from Kellogg during those times, but she admits she never said anything to Kellogg or anyone else at TentCraft about the two incidents. (*Id.* at PageID.1237–38.) According to Kellogg, who is about six feet four inches tall, he occasionally leans back in his chair with his hands above or on his head to relieve back pain. (ECF No. 161-6 at PageID.2039.)

### B.     May 15, 2018

On the afternoon of May 15, 2018, Plaintiff was seated next to Scott at the same computer desk depicted in Exhibit 10 to Plaintiff's deposition transcript. Scott was seated at the workstation in front of the computer, and Plaintiff was seated to his left. Grice was standing to Plaintiff's left, a couple of feet away in the vicinity of the shelving unit shown in Exhibit 10. (ECF No. 120 at

PageID.1239; ECF No. 123 at PageID.1458.) As Scott looked at Grice, Scott said, "hey, nice rack." (ECF No. 120 at PageID.1239; ECF No. 161-61-2 at PageID.2028.) Plaintiff admitted that the shelving unit or rack was new during her brief tenure at TentCraft. When she joined the company, ink was stored in a fireproof cabinet, but the method of storage changed when the shelf or rack replaced the fireproof cabinet. (ECF No. 120 at PageID.1238.) Neither Plaintiff nor Grice said anything in response to Scott's "nice rack" comment, and Plaintiff never mentioned the comment to anyone at TentCraft during her employment. (*Id.* at PageID.1240–41.)

### C.   May 16, 2018—Plaintiff's Termination

The next morning, Plaintiff was in the printing room, which has two large printers approximately ten feet apart, each attached to its own computer. (*Id.* at PageID.1244; ECF No. 161-5 at PageID.2036.) McNaughton was also in the printing room working on one of the computers. As McNaughton looked at Plaintiff, he noticed her scrolling through job status files on the other computer while the printer was running.[2] (ECF No. 161-5 at PageID.2036.) According to Plaintiff, McNaughton ran toward her waving his arms and yelling "what are you doing?" Plaintiff responded, "What does it look like I'm doing?" McNaughton then told Plaintiff that she "could do millions in damage," and asked Plaintiff if she "want[ed] to talk to someone about this?" Plaintiff told McNaughton that she was talking to him. (ECF No. 120 at PageID.1244.) Plaintiff admitted that during this exchange, which she indicated was heated, she put her hand on McNaughton's shoulder. (*Id.* at PageID.1245–46.) Plaintiff confirmed that McNaughton did not touch her. (*Id.* at PageID.1245.)

According to McNaughton, when Plaintiff put her hand on his shoulder, he told Plaintiff, "we don't need to be touching each other," and stepped back. McNaughton further claims that

---

[2] Plaintiff does not recall what she was doing at the time but did not deny that she was scrolling through the job status files. (ECF No. 120 at PageID.1244.)

Plaintiff said, "I've operated before and have experience. You and Shawn [Kellogg] need to trust me." As Plaintiff said this, she grabbed McNaughton's shoulders and shook him. (ECF No. 161-5 at PageID.2037.)

McNaughton notified Hanel of the incident, including that Plaintiff had grabbed his shoulders and shook him. During this conversation, Hanel noted that McNaughton was visibly upset and had expressed concern for his safety. (ECF No. 161-2 at PageID.2020.) When Hanel interviewed Plaintiff later that afternoon, she admitted touching McNaughton on the shoulder. Based on her admission, Hanel decided to terminate Plaintiff's employment for violating TentCraft's policy that employees should not touch each other in the manner Plaintiff touched McNaughton. (*Id.*)

At 2:58 p.m., shortly after Hanel terminated her employment, Plaintiff sent Hanel an email reporting that she had experienced an "instance of sexual harassment" on May 15, 2018, when Scott made the "hey nice rack" comment. (ECF No. 161-2 at PageID.2028.) Hanel followed up on Plaintiff's allegation by interviewing Scott and Grice about the allegation. Scott denied making any sex-based comment in front of Plaintiff. (ECF No. 164 at PageID.2177.) Grice denied hearing Scott make any comment of a sexual nature in front of Plaintiff. (*Id.*) Grice and Scott both believe that if Scott made the "nice rack" comment, he may have been referring to the new storage rack near the desk. (ECF No. 161-3 at PageID.2300; ECF No. 161-4 at PageID.2033.) Even though Hanel did not substantiate Plaintiff's allegation, he used the opportunity to review TentCraft's harassment policy with Scott. (ECF No. 161-2 at PageID.2021.)

### D.      Plaintiff's EEOC Charge

On September 14, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission. (ECF No. 123 at PageID.1463.) Plaintiff alleged the following:

On or about 15 May 2018, I was subjected to sexual harassment by a co-worker in front of a Supervisor. The Supervisor did nothing to correct the behavior. On 16 May 2018 the same Supervisor came to me and asked how I felt about the co-worker who had harassed me. I was noncommittal and obviously upset with the situation. Later that same day my employment was terminated. I did send a complaint to Human Resources complaining about the harm I had experienced, to no avail.

I believe I have been subjected to sexual harassment due to my sex, female, and discharged in retaliation for not having tolerated the sexual harassment I was subjected to in violation of Title VII of the Civil Rights Act of 1954, as amended.

(*Id.*)

## II.     Discussion

### A.     Motion to Strike

Before turning to the merits, I address Defendants' motion to strike Plaintiff's declaration. In their reply, Defendants noted that Plaintiff could not rely on a summary chart attached to her response at ECF No. 162-2, PageID.2118, because she failed to authenticate the chart and the underlying documents had not been introduced. (ECF No. 163 at PageID.2164–65.) On January 9, 2021, Plaintiff filed, without leave of court, a declaration purporting to authenticate the summary chart and the underlying documents attached to her response. (ECF No. 165.) On January 20, 2021, defense counsel notified Plaintiff that her declaration was not authorized under the Court's local civil rules and was a disguised attempt to file an unauthorized response to Defendants' reply. (ECF No. 168-1.) The following day, January 21, 2021, Plaintiff filed a motion for leave to file her declaration. (ECF No. 166.) Defendants filed their motion to strike on January 25, 2021, after Plaintiff failed to respond to their request for concurrence. On February 4, 2021, the Court entered the parties' stipulation and order withdrawing Plaintiff's motion for leave to file her declaration. (ECF No. 170.) For reasons that are unclear from the record, the stipulation neither withdrew Plaintiff's declaration nor resolved the instant motion.

Plaintiff argues that the motion should be denied for several reasons. First, she asserts that Defendants did not comply with the concurrence requirement set forth in Local Civil Rule 7.1(d) because they did not engage in a good faith effort to resolve the dispute before filing their motion. Plaintiff argues that Defendants presented her a take-it-or-leave-it proposition without any room for good-faith efforts to resolve the issue. Plaintiff has a point. Defendants' email points out that the declaration was improperly filed under the local rules and thus was unauthorized. It then notes Defendants' intention to file a motion to strike the declaration and request sanctions unless Plaintiff "concur[red] in the requested result . . . by 4:00 pm on Monday, January 25, 2021." (ECF No. 168-1.) The "requested result" appears to have been withdrawal of the declaration *and* consent to sanctions. A good-faith effort, however, would have entailed simply requesting that Plaintiff withdraw her declaration, which would have obviated the need for a motion to strike. As worded, Defendants' request left Plaintiff no room to remedy the situation without agreeing to sanctions. In this regard, Plaintiff's motion for leave was not an unreasonable response, although she should have filed it concurrently with her declaration. In any event, Plaintiff is not without fault because she did not attempt to engage Defendants after receiving their email to resolve the issue.

Plaintiff next argues that Defendants' request to strike is unauthorized because Defendants cite no authority for their request and Federal Rule of Civil Procedure 12(f), which Defendants did not cite, applies only to pleadings. Plaintiff is correct that that Rule 12(f) applies only to pleadings as defined in Rule 7(a) and not other documents, such as affidavits and declarations. *See Wimberly v. Clark Controller Co.*, 364 F.2d 225, 227 (6th Cir. 1966) (observing that Rule 12(f) "specifically relates to matters to be stricken from pleadings but ... make[s] [no] provision for testing the legal sufficiency of affidavits by a motion to strike"); *York v. Ferris State Univ.*, 36 F. Supp. 2d 976, 980 (W.D.Mich.1998) (holding that the term "pleadings" in Rule 12(f) does not include affidavits).

Nonetheless, courts have the inherent authority to strike improperly-filed matters and other items as part of managing their dockets. *See Taylor v. JP Morgan Chase Bank, N.A.*, No. 3:15-CV-509, 2018 WL 5777497, at *3 (E.D. Tenn. Nov. 2, 2018) ("Courts . . . have the inherent authority to strike non-pleadings in order to manage [their] docket[s].") (citing *Newman v. Univ. of Dayton*, No. 3:17-CV-179, 2017 WL 4076517, at *5 (S.D. Ohio Sept. 14, 2017); *Olagues v. Timken*, 5:17CV1870, 2018 WL 2214647, at *1 (N.D. Ohio. Jan. 3, 2018) (noting that the plaintiff's argument that Rule 12(f) did not authorize the defendant's motion to strike "ignores that this Court has the inherent authority to strike any improper filing"). Thus, the Court has the authority to strike an improperly filed document on its own initiative, even in the absence of a motion.

Last, Plaintiff argues that Defendants failed to identify the court rule that prohibited her from filing her declaration without leave. Local Civil Rule 7.1(b) provides that "[w]hen allegations of facts not appearing of record are relied upon in support of or in opposition to any motion, all affidavits or other documents relied upon to establish such facts shall accompany the [brief]." Rule 7.2(b), which addresses the length of briefs, provides that the word count limit does not include "attachments, exhibits, and affidavits." Finally, Rule 7.2(c), which governs the briefing schedule for dispositive motions, authorizes the opposing party to "file a responsive brief and any supporting materials" and the moving party to file "a reply brief." The rule also provides that "[t]he court may permit or require further briefing." Read together, these rules establish that a party must submit all of its supporting exhibits at the time it files its brief. Here, Plaintiff did not include her declaration with her supporting materials. Thus, if she wished to have the Court consider her declaration, she was required to file a motion for leave to file it. Moreover, as noted above, even in the absence of

a motion from Defendants, the Court retains the authority to strike unauthorized filings on its own initiative.[3]

The Court grants the motion to strike the declaration. However, I note that the contents of the declaration would not make a difference to the outcome of Defendants' motion for summary judgment.

In their motion, Defendants also request an award of sanctions in the amount of $1,925.00 pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, based largely upon Plaintiff's noncompliance or violations of this district's local civil rules. Defendants note that in addition to filing her declaration without leave of court: (1) Plaintiff's summary judgment response violated Local Civil Rules 7.2(b)(i) and (ii) by exceeding the maximum word limit and not including the requisite Certificate of Compliance and violated Local Rule 10.8 by failing to include a prominent exhibit number or letter on attachments to the brief; (2) Plaintiff's March 30, 2020 "Response and Cross-Motion Against Defendants' Motion to Strike" violated Local Civil Rule 7.3(b)(i) and (iii) by exceeding the maximum word limit and failed to include the required Certificate of Compliance; and (3) Plaintiff filed two improper reply briefs (ECF Nos. 129 and 152) in connection with her appeals of nondispositive motions. Finally, Defendants cite Plaintiff's failure to timely comply with the January 21, 2020 Order (ECF 127) directing her to pay Defendants $400.

---

[3] Defendants' filing of an amended exhibit (ECF No. 164) without leave after they filed their reply differs in nature from Plaintiff's filing because Defendants simply corrected their erroneous filing of the wrong document in their reply. Plaintiff cited TENT00023—Defendant Hanel's notes of his meetings with Scott and Grice following Plaintiff's termination—but did not file a copy of the document with her brief. Defendants intended to attach TENT00023 as Exhibit H to their reply for the Court to review, but instead attached TENT000223. (ECF No. 163-2.) Defendants thus filed TENT00023 to correct the error. In contrast, Plaintiff's declaration was a new exhibit, not a correction of a previously-filed document.

Pursuant to 28 U.S.C. § 1927, a court may impose sanctions against "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously . . . ." In addition, a district court has inherent authority to sanction a litigant who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (internal quotation marks and citation omitted).

First, regarding Section 1927, although Defendants cite cases within the Sixth Circuit applying the statute to pro se litigants, other district courts have concluded that the statute's language indicates that sanctions thereunder may be imposed against attorneys but not pro se litigants. *See, e.g.*, *Hunter v. Hamilton Cnty.*, No. 1:15-cv-540, 2017 WL 35445, at *5 (S.D. Ohio Jan. 3, 2017) (declining to apply Section 1927 to a pro se litigant whose law license had been suspended and was no longer a practicing attorney); *Li v. Recellular, Inc.*, No. 09-cv-11363, 2010 WL 1526379, at *8 (E.D. Mich. Apr. 16, 2010) (concluding that dicta in *Rentz v. Dynasty Apparel Industries, Inc.*, 556 F.3d 389, 395–96 n.6 (6th Cir. 2009), narrowly construing the statute indicated that the Sixth Circuit would not apply it to a pro se litigant who is neither an attorney nor admitted to practice law before a court). Given the narrow language of the statute, these cases appear to represent the better view.

More importantly, even if the Court were to conclude that the statute covers pro se litigants, Plaintiff's failure to comply with the local rules does not merit sanctions. A court may impose sanctions under Section 1927 "when an attorney has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir.1996) (internal quotation marks omitted). While a finding of bad faith

is not necessary under Section 1927, *see Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir.

1997), an attorney's misconduct "must amount to more than simple inadvertence or negligence that

has frustrated the trial judge." *Holmes*, 78 F.3d at 1049. While Plaintiff's lack of compliance with

the local rules has certainly been frustrating to counsel and the Court, her pro se status and

unfamiliarity with the rules, rather than bad faith or vexatiousness, appear to be the reasons for her

noncompliance. *See Powers v. Secretary of Dep't of Health & Human Servs.*, No. 16-cv-13668,

2020 WL 6156439, at *2 (E.D. Mich. Oct. 21, 2020) ("[A]lthough the Court in no way condones

Plaintiff's repeated failure to adhere to Court's Local Rules and the Rules of Civil Procedure,

considering Plaintiff's pro se status, and a lack of demonstrable bad faith on the part of Plaintiff,

the Court declines to impose sanctions under § 1927, or its inherent power, at this time.")

Therefore, Defendants' request for sanctions is denied.

### B.      Motion for Summary Judgment[4]

Defendants argue that they entitled to summary judgment on all of Plaintiff's claims, which

they construe as: (1) hostile environment sexual harassment; (2) retaliation; and (3) intentional

infliction of emotional distress. Although Defendants contend that Plaintiff failed to allege a

disparate treatment claim in her complaint, they argue that they are entitled to summary judgment

to the extent the Court construes the complaint as alleging such claim.[5]

---

[4] Defendants request, in the alternative, dismissal pursuant to Rule 41(b) based upon Plaintiff's
failure to comply with the Court's January 21, 2020 Order (ECF No. 144) directing Plaintiff to
pay Defendants $400 within 14 days. Because Plaintiff has never been warned that her case could
be dismissed for non-payment, I find this an insufficient basis for dismissal. Moreover, it is
undisputed that Plaintiff has now satisfied her obligation under the Order.

[5] Although not raised in their motion, I note that most of the individual Defendants would be
entitled to dismissal of the Title VII claims, to the extent Plaintiff asserts them against the
individual Defendants, because the Sixth Circuit has held that "an individual employee/supervisor,
who does not otherwise qualify as an 'employer,' may not be held personally liable under Title
VII." *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). There is no basis in

1.      **Summary Judgment Standard**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

2.      **Sexually Hostile Work Environment**

Plaintiff alleges that she was subjected to a hostile work environment during her employment at TentCraft. To state a claim for hostile work environment discrimination under Title VII, a plaintiff must allege that: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment created a hostile work environment; and (5) the employer is liable. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006).[6] "To establish employer liability where the harasser is a co-worker, a plaintiff must show that the employer knew or should have known of the conduct and

---

Plaintiff's complaint allegations or the summary judgment record to conclude that Grice, Hanel, and Scott could be considered Plaintiff's employer under Title VII.

[6] I conduct a single analysis for the Title VII and ELCRA claims because hostile work environment claims under both laws are evaluated under a substantially similar framework. *See Martin v. Challenge Mfg. Co.*, No. 1:08-cv-1195, 2010 WL 1032660, at *4 (W.D. Mich. Mar. 17, 2010) (citing *Radtke v. Everett*, 442 Mich. 368, 382–83 (1993)); *Myers v. Todd's Hydroseeding & Landscape, LLC*, 368 F. Supp. 2d 808, 810 (E.D. Mich. 2005) (noting that hostile work environment claims under Title VII and ELCRA use "the same evidentiary framework") (citing *Humenny v. Genex Corp.*, 390 F.3d 901 (6th Cir. 2004)).

failed to take prompt and appropriate corrective action." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 307 (6th Cir. 2016) (citing *EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001)). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (internal citation and quotation marks omitted).

Defendants argue that Plaintiff fails to establish the third, fourth, and fifth elements of the claim.

### a.     Harassment Based on Sex

Title VII prohibits discrimination in employment based on an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Harassment based on sex that creates a hostile work environment is prohibited by Title VII. *See Meritor Sav. Bank. FSB v. Vinson*, 477 U.S. 57, 65 (1986). Before a court inquires "as to whether the degree of 'harassment' was sufficient to violate Title VII, it is important to determine whether there was any discriminatory 'harassment' in the first place." *Schramm v. Slater*, 105 F. App'x 34, 39 (6th Cir. 2004). The Supreme Court has noted that "Title VII does not prohibit all verbal or physical harassment in the workplace." *Oncale*, 523 U.S. at 80. Rather, Title VII pertains only to harassment based on a protected status, such as sex or race. *Id.* Thus, "the conduct of jerks, bullies, and persecutors is simply not actionable under Title VII unless they are acting because of the victim's [protected status]." *Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 467 (6th Cir. 2012).

Plaintiff's sexual harassment claim is based on three instances of conduct: (1) Defendant Scott's "hey nice rack" comment on May 15, 2018; and (2) Kellogg's leaning back in a chair on May 10 and 11, 2018. The Sixth Circuit has observed that "the conduct underlying a sexual harassment claim need not be overtly sexual in nature. Any unequal treatment of an employee that

would not occur but for the employee's gender may, if sufficiently severe or pervasive . . . , constitute a hostile environment in violation of Title VII." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999) (italics in original). On the other hand, the Supreme Court has observed that a co-worker's comments are not "automatically discrimination because of sex merely because the words used have sexual content or connotations." *Oncale*, 523 U.S. at 80.

First, regarding Scott's "nice rack" comment, nothing about the context in which Scott made it suggests that it was sexual in nature. Plaintiff argues that the phrase "nice rack" is a slang term referring to a woman's breasts. That certainly can be the meaning, but depending on the context, it could refer to something else: there are lots of types of racks. Here, as described by Plaintiff, one employee in a print shop might look at another employee standing near a new ink shelf or rack and, noticing the new rack, say, "hey, nice rack." Other than Plaintiff's subjective interpretation of the comment, nothing about the circumstances suggests that Scott intended it in a sexual manner. Plaintiff testified that they were not discussing anything before Scott made the comment, and nobody said anything afterward. (ECF No. 120 at PageID.1239–40.) The absence of some additional indication suggesting that Scott intended a sexual connotation—such as an explicit sexually suggestive comment, a lewd gesture, or even sniggering—tends to undermine Plaintiff's assertion that Scott was really referring to Plaintiff's breasts rather than the new rack behind or next to Grice.

As for the two instances of Kellogg leaning straight back in his chair with his hands behind his head, there is no indication that this rather common form of stretching was even remotely sexual. In fact, given Plaintiff's own description of the circumstances, it is difficult to comprehend how Kellogg's groin could have been "uncomfortably close" to her face if Kellogg's torso remained in his chair and Plaintiff was simply sitting next to him in her chair. In any event, nothing

in the record shows that Kellogg's conduct had anything to do with Plaintiff's sex, and Plaintiff

has not presented evidence that Kellogg leaned back in his chair only in front of Plaintiff.

Finally, Plaintiff cites other circumstances as supportive of her sexual harassment claim,

but she presents no evidence that such conduct was based on her sex. For example, Plaintiff says

that Kellogg refused to allow her to keep colored markers in a pencil cup on a shared workstation

desk. (ECF No. 162 at PageID.2057.) Plaintiff does not suggest that Kellogg allowed male

employees to keep colored markers in the pencil cup. Maybe Kellogg was just a jerk or oddly

particular about his pencils, but as the Supreme Court has observed, Title VII is not a "general

civility code." *Oncale*, 523 U.S. at 80.

### b.    Hostile Environment

A hostile environment exists "[w]hen the workplace is permeated with discriminatory

intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of

the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*,

510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). In *Harris*, the Court

observed:

> mere utterance of an . . . epithet which engenders offensive feelings in an employee
> does not sufficiently affect the conditions of employment to implicate Title VII.
> Conduct that is not severe or pervasive enough to create an objectively hostile or
> abusive work environment—an environment that a reasonable person would find
> hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not
> subjectively perceive the environment to be abusive, the conduct has not actually
> altered the conditions of the victim's employment, and there is no Title VII
> violation.

*Id.* at 21-22 (internal citations omitted). A court must consider the totality of the circumstances in

determining whether an environment is "hostile" or "abusive," including "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work

performance." *Id.* at 23. "A mere unfriendly work environment is insufficient to establish liability." *Mast v. IMCO Recycling of Ohio, Inc.*, 58 F. App'x 116, 118 (6th Cir. 2003).

Here, no reasonable jury could conclude that the work environment at TentCraft was sufficiently severe or pervasive to create an objectively hostile or abusive work environment based on sex. The conduct Plaintiff cites was not severe, physically threatening, or abusive and, as noted above, was not explicitly sexual. Even accepting Plaintiff's characterization of Scott's comment and Kellogg's posture as offensive, the conduct Plaintiff alleges here is much less severe than in other cases where the Sixth Circuit has held the acts were insufficient to alter the conditions of the plaintiff's employment. For example, in *Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 351–52 (6th Cir. 2005), the court found that one plaintiff's supervisor's vulgar jokes, placing a vibrating pager on her thigh and asking her if it felt good, and pulling her overalls after she told him she was wearing a thong did not constitute conduct pervasive enough to alter the conditions of the plaintiff's employment. Similarly, in *Bowman v. Shawnee State University*, 220 F.3d 456, 464 (6th Cir. 2000), the court found that several incidents of harassment, including shoulder rubbing, grabbing of buttocks, and suggestive comments, were not severe or pervasive.

Citing Tent000023, (ECF No. 164 at PageID.2177), Plaintiff suggests that Hanel admitted that "'the described behavior violated [TentCraft's] sexual harassment policy.'" (ECF No. 162 at PageID.2078 (quoting Tent000023).) Plaintiff reads Hanel's note out of context, which indicates that Hanel was referring to Plaintiff's description of Scott's statement. In any event, Hanel's notes are largely immaterial to the summary judgment determination because, as discussed above, even if Scott's "hey nice rack" comment had a sexual connotation, as Plaintiff claims, considered alone or together with the other conduct Plaintiff cites, it falls short of establishing an objectively hostile or abusive work environment.

17

In short, the totality of the circumstances does not show the existence of a hostile work environment at TentCraft that altered the conditions of Plaintiff's employment. Accordingly, the Court need not address the fifth element of Plaintiff's case—employer liability.

### 3.      Retaliation

To establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in protected activity; (2) the employer was aware of the plaintiff's protected activity; (3) she suffered an adverse employment action; and (4) there is a causal connection between the protected activity and the adverse employment action.[7] *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 562-63 (6th Cir. 2004). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. *Id*. (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000)). If the defendant meets its burden, the plaintiff must then demonstrate by a preponderance of the evidence that the proffered reason was mere pretext. This entails a showing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action. *Id.* (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)).

Plaintiff's retaliation claim fails to make it out of the starting gate because she cannot establish that she engaged in protected conduct prior to her termination. Title VII's anti-retaliation provision prohibits retaliation when an employee "oppos[es] any practice made an unlawful employment practice by [Title VII]" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3(a). It is undisputed that Plaintiff did not file her Charge of Discrimination until four months after her termination.

---

[7] Because the ELCRA retaliation analysis is identical to the Title VII analysis, *Wasek*, 682 F.3d at 472, I conduct a single analysis for both claims.

Moreover, Plaintiff has presented no evidence that she engaged in any other protected conduct covered by the opposition clause during her employment at TentCraft. "The opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). Plaintiff concedes that she did not complain about sexual harassment at any time prior to her termination on May 16, 2018, and she presents no evidence that she opposed any other practice prohibited by Title VII before her termination. Although she argues that she *intended* to speak to Hanel about the perceived sexual harassment on May 16, she never did so. Hanel, the decision-maker, had no knowledge of any complaint by Plaintiff at the time he made the decision. Accordingly, Defendants are entitled to summary judgment on this claim because Plaintiff cannot establish the first and third elements of a prima facie case.

### 4.    Disparate Treatment

Counts I and III are captioned "Discrimination Based on Sex." Defendants contend that those counts are limited to Plaintiff's hostile work environment claim and that her complaint does not allege disparate treatment. Although a court is required to liberally construe a pro se plaintiff's pleading, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), Plaintiff's factual allegations in those counts cannot reasonably be construed to allege that TentCraft treated her differently than similarly situated male employees in terminating her employment.[8] But even giving Plaintiff the

---

[8] Defendants could have argued that, regardless of her complaint allegations, Plaintiff cannot maintain a disparate treatment claim under Title VII because she failed to exhaust that claim with the EEOC. "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in h[er] EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) (citing 42 U.S.C. § 2000e-5(f)(1)). Although a claim may be considered within the scope of an EEOC charge if "the claim can be reasonably expected to grow out of the EEOC charge," *Strouss v. Michigan Dep't of Corrs.*, 250 F.3d 336, 342 (6th Cir. 2001), nothing in Plaintiff's charge indicates that a disparate treatment claim would reasonably be expected to grow out of an

benefit of the doubt because she mentions "disparate treatment" elsewhere in her complaint (ECF No. 1 at PageID.4), and assuming that she intended to allege a disparate treatment claim, the claim cannot survive summary judgment.

Because Plaintiff presents no direct evidence of discrimination, she may establish her claim through the well-known burden-shifting framework for circumstantial evidence-based claims set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This framework involves three steps:

> [T]he plaintiff must first submit evidence from which a reasonable jury could conclude that he or she established a prima facie case of discrimination. If the plaintiff does so, the defendant must then offer admissible evidence of a legitimate, nondiscriminatory reason for its action. Finally, if the defendant succeeds in this task, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination.

*Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009) (cleaned up). To establish a prima facie case of sex discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently than similarly-situated male employees for the same or similar conduct. *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir. 1992)).

Plaintiff's claim fails at the prima facie stage. Plaintiff can establish, or Defendants do not dispute, the first three elements—that Plaintiff is a female, she suffered an adverse employment

---

investigation of Plaintiff's hostile work environment and retaliation allegations. Regardless, because exhaustion is not jurisdictional in nature, the Court may not raise the issue *sua sponte*. *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1850–51 (2019); *see Adamov v. U.S. Bank Nat'l Ass'n*, 726 F.3d 851, 856 (6th Cir. 2013) (district court erred in *sua sponte* raising exhaustion as a jurisdictional issue; the defendant forfeited exhaustion by failing to raise it in the district court).

action in that her employment was terminated, and she was qualified for the position.[9]  However, she fails to present evidence that she was treated less favorably than a similarly situated male employee. To be similarly-situated, "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). "[R]ather, . . . the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'" *Id.* (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) (emphasis added)). In her deposition, Plaintiff identified Scott and McNaughton as two comparators. Plaintiff said that Scott committed sexual harassment but was not terminated, and McNaughton engaged in a "verbal tirade" toward Plaintiff but was not terminated. (ECF No. 120 at PageID.1253.) Neither one qualifies as a comparator. Scott's "hey nice rack" comment was less serious than Plaintiff's physical actions of touching and shaking McNaughton during their heated altercation. Similarly, although McNaughton engaged in a "verbal tirade" against Plaintiff, Plaintiff admits that he never touched her.

Therefore, summary judgment is also proper on this claim.

---

[9] In her response, Plaintiff suggests that she was treated differently than male employees with regard to execution and receipt of human resources documents and policies. However, this alleged treatment cannot be construed as an adverse employment action. To qualify as adverse action, the action must be materially adverse. *Kocsis v. Multi–Care Mgmt.*, 97 F.3d 876, 885 (6th Cir. 1996). A materially adverse employment action ordinarily includes termination, a decrease in salary or less distinguished title, a material loss of benefits, significantly diminished responsibilities, and the like. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). While Plaintiff's termination qualifies as a materially adverse action, the timing of execution and receipt of personnel documents does not qualify as a materially adverse action.

### 5.    Intentional Infliction of Emotional Distress

Plaintiff's final claim is for infliction of emotional distress. To state a claim for intentional infliction of emotional distress under Michigan law, a plaintiff must allege, among other things, that the defendant's conduct was "extreme and outrageous." *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (1985). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham v. Ford*, 237 Mich. App. 670, 674 (1999). The test is whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts*, 422 Mich. at 603 (quoting Restatement (Second) of Torts § 46 cmt. d (1948)).

Plaintiff alleges no facts in her complaint to support this claim, and she does not indicate whether it is asserted against all Defendants or only a few. In her deposition, however, she testified that this claim is based on Scott's "nice rack" comment, her verbal altercation with McNaughton, and her termination from TentCraft. None of this conduct meets the high threshold for this claim. Scott's "nice rack" comment certainly does not meet this standard. *See Selph v. Gottlieb's Fin. Servs., Inc.*, 35 F. Supp. 2d 564, 569 (W.D. Mich. 1999) (concluding that the plaintiff's coworker's conduct of leaving notes on her desk, kissing her, brushing up against her, and placing a hand on her knee "was not so outrageous as to go beyond all possible bounds of decency"). The same is true of the verbal altercation with McNaughton. *See Roberts* 422 Mich. at 603 (noting that "liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities") (quoting Restatement (Second) of Torts § 46 cmt. d). Finally, as TentCraft had a valid reason to discharge Plaintiff, its conduct cannot be considered outrageous. Accordingly, Defendants are entitled to summary judgment on this claim.

### III.    Conclusion

In sum, Defendants' motion to strike (ECF No. 167) is **granted** with regard to the request to strike Plaintiff's declaration and **denied** as to the request for sanctions (ECF No. 165); and it is **recommended** that the Court **grant** Defendants' motion for summary judgment (ECF No. 161) and dismiss Plaintiff's complaint with prejudice.

Dated: April 20, 2021                                         /s/ Sally J. Berens
                                                             SALLY J. BERENS
                                                             U.S. Magistrate Judge

### **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).